UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROVIDENCE PUBLICATIONS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HUB INTERNATIONAL INSURANCE SERVICES, INC., a California corporation d/b/a HUB INTERNATIONAL FRESNO,<br><br>Defendant. | No. 1:24-cv-00109-KES-BAM<br><br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. 12) |

    Plaintiff Providence Publications, LLC, ("Providence") brings this action against defendant Hub International Insurance Services, Inc., ("Hub") alleging willful infringement under the Copyright Act of 1976, 17 U.S.C. § 501 *et seq.* Doc. 1 ("Compl."). Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that plaintiff's complaint fails to state a claim because it does not sufficiently allege that the terms of defendant's license to use plaintiff's copyrighted work barred defendant's distribution of the materials to its employees, and asserting, for claims prior to January 2021, that such earlier claims are barred by the three-year statute of limitations at 17 U.S.C. § 507(b). Doc. 12 ("Mot. to Dismiss"). Plaintiff filed an opposition, Doc. 18 ("Opp'n"), and defendant replied, Doc. 19 ("Reply"). This court has subject matter jurisdiction over this action because federal courts are vested with exclusive jurisdiction in

copyright cases. 28 U.S.C. § 1338(a). For the reasons set forth below, the court grants defendant's motion to dismiss.

**I.      Background[1]**

Plaintiff Providence is the publisher of a newsletter titled *Workers' Comp Executive* ("*WCE*") which features original articles about occupational health and safety issues. Compl. ¶¶ 8–9. New editions of *WCE* are published and distributed approximately twenty-two times per year to its subscribers via email. *Id.* ¶¶ 8, 10. Plaintiff offers three types of subscriptions to *WCE*: "(1) single copy subscriptions; (2) multi-copy subscriptions for a specific number of copies for a specific number of identified recipients; and (3) enterprise subscriptions, for internal use by an entire subscriber institution." *Id.* ¶ 10. Plaintiff is the exclusive copyright owner for each issue of *WCE* and each article appearing in *WCE*. *Id.* ¶¶ 11–12. Defendant Hub is an insurance and financial services provider located in Fresno, California. *Id.* ¶ 4. Defendant has subscribed to *WCE* since January 2007, and the *WCE* newsletters were electronically delivered to defendant's Regional President, Michael Der Manouel. *Id*. ¶ 21–23.

On January 23, 2024, plaintiff filed a complaint against defendant alleging willful copyright infringement. *Id.* Plaintiff alleges that defendant has engaged in copyright infringement since it first subscribed to *WCE* in January 2007. *Id.* ¶ 31.

According to plaintiff's analysis of its email data from the delivery of *WCE* to Der Manouel, defendant copied and distributed to its employees multiple *WCE* issues. *Id.* ¶¶ 26–29. The April 11, 2023, issue was forwarded to employees "at least 40 separate times," the April 25, 2023, issue was forwarded "at least 29 separate times," and the June 14, 2023, issue was forwarded "at least 40 separate times." *Id.* ¶¶ 28–29. The complaint does not allege that defendant forwarded *WCE* newsletters to anyone other than defendant's employees. Rather, plaintiff contends that defendant's "pattern of routine and substantial forwarding indicates systematic copying and distributing of *WCE*" to defendant's employees, and that each incident of this constitutes willful copyright infringement. *Id.* ¶¶ 30, 39. Plaintiff asserts that it only recently

---

[1] This recitation of facts is taken from plaintiff's complaint. Compl. These allegations are assumed to be true for the purposes of the pending motion.

2

1 learned of defendant's forwarding of the *WCE* issues, and that it is unable to uncover the full
2 extent because "plaintiff's records capture only limited data" and "defendant's email servers and
3 computer systems are highly secure . . . and cannot be accessed by the general public or by
4 plaintiff." *Id.* ¶¶ 30, 32–33.

5 On May 22, 2024, defendant moved to dismiss pursuant to Rule 12(b)(6). Mot. to
6 Dismiss. Defendant makes two arguments: First, that the complaint fails to state a claim for
7 copyright infringement because it acknowledges that defendant possessed a *WCE* subscription
8 and that some subscriptions authorize the subscriber to distribute the *WCE* newsletters company-
9 wide, but it does not identify the type of subscription defendant possessed and therefore fails to
10 sufficiently allege that defendant's forwarding was unpermitted. Second, that the majority of
11 plaintiff's claims are time-barred by the Copyright Act's three-year statute of limitations. *Id.*
12 Plaintiff filed an opposition to the motion, and defendant replied. Docs. 18, 19. On July 2, 2024,
13 the court took the motion under submission without a hearing. Doc. 20.

14 **II.**     **Legal Standard**

15 The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal
16 sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.
17 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of
18 sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901
19 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to
20 relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A
21 claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
22 the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.
23 Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain facts that "nudge [the plaintiff's]
24 claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

25 In determining whether a complaint states a claim on which relief may be granted, the
26 court accepts as true the allegations in the complaint and construes the allegations in the light
27 most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However,
28 the court need not assume the truth of legal conclusions cast in the form of factual allegations.

*Iqbal*, 556 U.S. at 680. While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also id.* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The "underlying purpose of Rule 15 [is] to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). However, a court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. Discussion and Analysis

#### a. Scope of the License

Turning to the first argument, the parties dispute whether plaintiff has adequately pleaded copyright infringement and whether plaintiff must allege defendant's subscription type in this case to state a claim for copyright infringement. Plaintiff relies upon *Unicolors, Inc. v. Urb. Outfitters Inc.*, 853 F.3d 980, 984 (9th Cir. 2017), a case concerning copyright infringement between two parties who had no prior business relationship, which held that a claim of copyright infringement requires a plaintiff to show that (1) it owned a valid copyright; and (2) defendant copied protected aspects of plaintiff's copyrighted work. Plaintiff contends that it sufficiently pleaded facts establishing those two elements. However, in this case, the complaint pleads that defendant had a license to use the copyrighted works. The issue is therefore whether defendant

4

exceeded the scope of that license by distributing the *WCE* newsletters to its employees.

Defendant appropriately points to *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517 (9th Cir 1993), in which the Ninth Circuit evaluated a claim of copyright infringement between a licensor and licensee. In *MAI Systems Corp.*, the plaintiff, a software company, licensed its software to the defendant, a company which used the software to perform computer repairs. *Id.* at 513, 517–19. In the process of performing those repairs, the defendant uploaded the software onto its customers' computers, and the plaintiff argued such use of the software was not permitted by the defendant's license and therefore infringed the plaintiff's copyright. *Id.* at 517–19. The Ninth Circuit agreed. *Id.* "[Plaintiff's] software licenses do not allow for the use or copying of software by [licensees] such as [defendant]. Therefore, any 'copying' done by Peak is 'beyond the scope' of [its] license." *Id.* at 517 (quoting *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989)). In that context, the court held that a claim for copyright infringement required the plaintiff to demonstrate "ownership of a copyright and a copying of [a] protectable expression *beyond the scope of the license*." *Id.* at 517 (emphasis added). Similarly, the case at hand concerns the scope of defendant's subscription, a type of license, to access and distribute plaintiff's copyrighted work.

Given the complaint's acknowledgement that defendant possessed a subscription, and that certain subscriptions would authorize a subscriber to provide the *WCE* newsletters to its employees, the scope of defendant's subscription is a necessary fact that the complaint must also establish. *See, e.g.*, *id.*; *S.O.S., Inc*, 886 F.2d at 1085. When a copyright holder alleges a licensee committed copyright infringement, the copyright holder must plead facts which demonstrate the scope of the license. *See Menzel v. Scholastic, Inc.*, No. 17-cv-05499-EMC, 2018 WL 1400386, at *4 n.1 (N.D. Cal. March 19, 2018) (where complaint alleges existence of license, plaintiff must also allege license was exceeded).

In *Bourne v. Walt Disney Co.*, 68 F.3d 621 (2d Cir. 1995), an infringement case involving a license between the parties, the Second Circuit addressed why the scope of the license is a necessary element of a copyright infringement claim against a licensee. The court held that "the

copyright owner bears the burden of proving that the defendant's copying was unauthorized [by the license]." *Id.* at 631.  The court reasoned that any copyright infringement case involving the question of whether a defendant exceeded the scope of its license "present[s] the court with a question that essentially is one of contract: whether the parties' license agreement encompasses the defendant's activities." *Id.*  "Just as in an ordinary contract action, the party claiming a breach carries the burden" of proving that the defendant's use was unauthorized.  *Id.*  The reasoning in *Bourne* applies to the dispute at hand.  Where the plaintiff's complaint establishes that defendant had a license for the copyrighted material, plaintiff has the burden to plead facts alleging that defendant exceeded the scope of the license.  *See* Menzel, 2019 WL 6896145, at *3–4 (citing *Bourne*).

The complaint admits defendant had a license (defendant's subscription) for the *WCE* newsletter.  The complaint alleges that defendant distributed the newsletters to its employees.  The complaint also alleges that there were three different types of subscription – a single copy subscription, multi-copy subscription, or enterprise subscription – but it fails to allege which type of subscription defendant possessed.  This fact is essential to plaintiff's claim because, if defendant possessed an enterprise subscription, the complaint acknowledges defendant would be permitted to forward the newsletters "for internal use by an entire subscriber institution" – i.e., all of defendant's employees.  It is also not clear that plaintiff could allege an infringement claim if defendant had a multi-copy subscription.  If defendant possessed a single copy subscription, presumably further forwarding of the subscription would exceed the scope of the license, but plaintiff's complaint fails to include any allegation that defendant possessed a single copy subscription, a determination that is clearly within plaintiff's knowledge.  Without the missing factual allegations as to the scope of defendant's subscription, plaintiff's complaint fails to state a claim.  The complaint fails to "nudge [plaintiff's] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

In its opposition, plaintiff argues, without any citation, that the complaint states that defendant "received a single copy subscription."  Opp'n at 8.  Plaintiff fails to cite a provision of

the complaint with this statement because the complaint does not contain any such allegation. Plaintiff's reliance on paragraph 35 of the complaint is unavailing. That paragraph states that "[p]laintiff has never authorized [defendant] to copy, transmit, or distribute the [issues of *WCE*]." As plaintiff has not alleged the type of subscription that defendant possessed, paragraph 35 is just a "legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). In *Twombly*, the plaintiff's complaint alleged that the defendants "agreed not to compete with one another," *see id.* at 564 n.9, and the Court explained that "[a]lthough in form a few stray statements speak directly of agreement [a necessary element of the plaintiff's claim], on fair reading these are merely legal conclusions resting on the prior allegations," *id.* at 564. Similarly, here, a statement that defendant was not authorized to copy, transmit, or distribute issues of *WCE* is a conclusion that follows only if the complaint first sufficiently alleges that defendant had a subscription type that restricted it from further distributing the newsletters to its employees, which the complaint fails to do.

In sum, a copyright infringement claim requires the plaintiff to allege facts showing "ownership of a copyright and a copying of [a] protectable expression beyond the scope of the license." *MAI Systems Corp.*, 991 F.2d at 517. The complaint omits key facts regarding the scope of the license between the parties, and thus fails to state a claim.

As plaintiff may be able to allege additional facts concerning the scope of the defendant's subscription, the court grants plaintiff leave to file a first amended complaint within twenty-one (21) days from the filing of this order.

**b. Statute of Limitations**

Defendant's second argument is that plaintiff's claims occurring before January 2021—the majority of its claims — are barred by the three-year statute of limitations for copyright infringement actions. Doc. 12 at 13–15 (citing 17 U.S.C. § 507(b)). The Ninth Circuit applies the "discovery rule" to determine when the statute of limitations begins to accrue on a claim: "a claim accrues when the copyright holder knows or reasonably should know that an infringement occurred." *Starz Ent., LLC v. MGM Domestic Television Dist., LLC*, 39 F.4th 1236, 1238 (9th

7

1    Cir. 2022). "Although a copyright holder has a 'duty of diligence' to investigate potential

2    infringements, 'inquiry notice must be triggered by some event or series of events that comes to

3    the attention of the aggrieved party.'" *Starz Ent., LLC v. MGM Dom. Television Distribution*,

4    *LLC*, 510 F. Supp. 3d 878, 888 (C.D. Cal. 2021) (quoting *Warren Freedenfeld Assocs., Inc. v.*

5    *McTigue*, 531 F.3d 38, 45 (1st Cir. 2008)), *aff'd* 39 F.4th 1236, 1247 (9th Cir. 2022).

6        The statute of limitations begins to accrue under the discovery rule when a copyright

7    owner has sufficient facts to put it on notice of defendant's potential infringement. *Media Rights*

8    *Tech., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1023–24 (9th Cir. 2019); *see also Pincay v.*

9    *Andrews*, 238 F.3d 1106, 1109–10 (9th Cir. 2001) ("The plaintiff is deemed to have had

10   constructive knowledge if it had enough information to warrant an investigation which, if

11   reasonably diligent, would have led to discovery of the [claim]."); *Starz Ent.*, 510 F. Supp. 3d at

12   888 ("The familiar aphorism teaches that where there is smoke there is fire; but smoke, or

13   something tantamount to it, is necessary to put a person on inquiry notice that a fire has started.").

14       There are no facts in the complaint to indicate that plaintiff had notice of defendant's

15   copying prior to its recent discovery. Plaintiff does not allege any public distribution of the

16   copyrighted materials that could have put it on notice of the alleged infringement; plaintiff alleges

17   only that defendant infringed the copyright by distributing the newsletters to certain of its

18   employees. The complaint alleges that plaintiff distributed the *WCE* newsletters to its subscribers

19   by email, and that its recent "analysis of email data" enabled it to detect defendant's redistribution

20   of the newsletters to multiple employees. Compl. ¶¶ 8–10, 26. It states that "[p]laintiff recently

21   learned from its records that the *WCE* delivery emails sent to Mr. Der Manouel have been

22   forwarded and copied regularly." *Id.* ¶ 29. The complaint asserts that relevant data is on

23   defendant's "highly secure email servers" which are inaccessible to the general public and

24   plaintiff. *Id.* ¶¶ 30, 32, 33. None of these allegations indicate that plaintiff had notice of the

25   infringement prior to its recent analysis of email data.

26       Defendant argues that the fact that plaintiff was able to detect the alleged copying from its

27   own email records strongly suggests that plaintiff "has had the ability to detect its subscriber's

28   email forwarding activities all along," and therefore, the statute of limitations began to run on the

8

incidents of infringement occurring prior to 2021. *See* Mot. to Dismiss at 14–15. This argument misses the mark. Even if plaintiff had the ability earlier on to detect the copying and forwarding through analysis of its email data, nothing on the face of the complaint indicates that it carried out that analysis until recently or that there was anything drawing plaintiff's attention to the data to establish inquiry notice. "The duty of diligence does not create a duty to continuously monitor a [licensee] to ensure compliance with its obligations, absent any reason to otherwise suspect a breach. The law does not inject such paranoia into the licensor-licensee relationship." *Starz Ent.*, 510 F. Supp. 3d at 888 (citing *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 725 (E.D. Mich. 2013)).

In *Starz Ent.*, Starz purchased the exclusive right to exhibit 761 MGM works on its streaming service, but during the period of exclusivity MGM also licensed 340 of those works to Starz's competitors. 39 F.4th at 1238–39. Starz did not learn of MGM's infringement until one of its employees noticed that one of the works for which Starz had an exclusive license was available on a competitor's streaming service. *Id.* Even though that information was publicly available, and Starz had the ability to discover it at any time and had an incentive to do so as the deal was valued at over $70 million, the Ninth Circuit held there was no inquiry notice until Starz's employee made the "fortuitous discovery" by encountering the film on the competitor's service. *Id.* at 1238–39, 1247. There is no basis in the present case to hold plaintiff to a higher standard.[2]

The statute of limitations does not require dismissal of any claims because plaintiff's

---

[2] Defendant cites to *Migliori v. Boeing North American, Inc.*, 114 F. Supp. 2d 976 (C.D. Cal. 2000), in contending that, under the discovery rule, plaintiff must affirmatively "plead: '(a) lack of knowledge; (b) lack of a means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); [and] (c) how and when [it] did actually discover the claim.'" Reply at 6. However, the *Migliori* decision evaluated state law claims and relied on California's formulation of the discovery rule, *see* 97 F. Supp. 2d at 982; the case did not concern the application of the Ninth Circuit's discovery rule or a copyright infringement claim. Additionally, as addressed above, the complaint sufficiently pleads that plaintiff only recently learned of defendant's distribution of the newsletters, establishing its "lack of knowledge" and "how and when [it] did actually discover the claim." To the extent defendant argues that the second element, a "lack of a means of obtaining knowledge" of the infringement, requires plaintiff to have undertaken an investigation even without inquiry notice of the potential infringement, that is not required under Ninth Circuit precedent. *See Starz Ent., LLC*, 39 F.4th at 1247 (Starz not on inquiry notice until its employee made "fortuitous discovery" by encountering film on competitor's service, even though information had been publicly available).

complaint sufficiently alleges that plaintiff only recently discovered the alleged infringement. At this stage of the litigation, that is sufficient when there is no allegation on the face of the complaint of anything putting plaintiff on earlier notice of defendant's alleged infringement. "It would be unreasonably burdensome to impose on a copyright owner a 'never ending obligation to discover whether anyone to whom he ever supplied his [copyrighted material] would copy it.'" *Starz Ent.*, 510 F. Supp. 3d at 888 (quoting *Design Basics, LLC*, 977 F. Supp. 2d 714, 725 (E.D. Mich. 2013)). "Of course, precisely when a claim accrues is a question of fact." *Starz Ent., LLC*, 510 F.Supp.3d at 890 (citing *Polar BearProd., Inc. v. Timex Corp.*, 384 F.3d 700, 707 (9th Cir. 2004)). Defendant may re-raise this issue if, after discovery, the facts alleged prove to be untrue.

## IV.   Conclusion and Order

Based upon the foregoing, defendant's motion to dismiss, Doc. 12, is **GRANTED** without prejudice.

Plaintiff may file an amended complaint consistent with this order within twenty-one (21) days of the filing of the order.

IT IS SO ORDERED.

Dated:   July 8, 2024

UNITED STATES DISTRICT JUDGE